# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    Plaintiff,

    v.                                                                Case No. 19-CR-99

CHRISTOPHER GARDNER,

    Defendant.

## ORDER ON DEFENDANT'S MOTION TO INSPECT AND TEST

On May 29, 2019, a grand jury sitting in the Eastern District of Wisconsin returned a five-count indictment against Christopher Gardner, charging him with four counts of wire fraud in violation of 18 U.S.C. §§ 1343 and 2 and one count of transportation of a stolen motor vehicle in foreign commerce in violation of 18 U.S.C. §§ 2312 and 2. (Docket # 1.) Gardner was extradited from Italy and appeared in this district on June 17, 2022. (Docket # 9.) At that time, Gardner was arraigned on the charges and entered a plea of not guilty. (*Id.*) This case has been designated complex (Docket # 11) and jury trial before the Honorable Lynn Adelman will be scheduled after resolution of pretrial motions.

Currently before me is Gardner's motion to visually inspect and conduct testing on: (1) the vehicle identified as a 1938 Talbot Lago T150-SS Teardrop Coupe, allegedly bearing the chassis number 90108, (2) the two-carburetor Talbot Lago engine, and (3) the three-carburetor Talbot Lago engine. (Docket # 27.) Gardner also requests an evidentiary hearing to establish whether the government maintains control over TL 90108, to determine the chain of custody of TL 90108 during the dispute regarding ownership and this criminal case, and to

determine whether TL 90108 has been modified or changed in any way which could give rise to a spoliation of evidence motion. (*Id.* at 8.)

The government does not object to a visual inspection of the vehicle by the defense; however, it argues that the Court should deny Gardner's motion for an evidentiary hearing and with respect to the testing request because Gardner does not identify the specific testing sought, does not provide any authority for such a broad testing request, and does not demonstrate the materiality of the evidence to be tested. (Docket # 32 at 1–2.)

**FACTS**

1. *Background Regarding the Alleged Fraudulent Scheme*

The government alleges that on or about March 4, 2001, Gardner burglarized the workshop of Roy Leiske in Milwaukee, Wisconsin, at which time he stole a 1938 Talbot Lago T150C-SS Teardrop Coupe, bearing chassis number 90108 and having a two-carburetor racing engine bearing the number 17317C ("TL 90108"). (Indictment ¶¶ 2–3, Docket # 1.) The vehicle was one of only approximately sixteen Talbot Lago Teardrop Coupes of its style ever made. (*Id.* ¶ 3.) When it was stolen, the TL 90108 was in a disassembled and unrestored condition. (*Id.*) The government alleges that Gardner caused the vehicle to be transported from Wisconsin and kept in storage until Leiske died in July 2005. (*Id.* ¶ 4.)

Around October 2005, the government alleges Gardner forged a bill of sale and title transfer documents falsely indicating that Gardner had legally bought the TL 90108 from Leiske's heir, R.M. (*Id.* ¶ 5.) The government alleges Gardner forged the documents to defraud potential buyers into believing Gardner was the true owner of the TL 90108 and could convey clear title to it. (*Id.*) Around October 10, 2005, Gardner traveled to Milwaukee to meet with the Milwaukee Police Department ("MPD") to ask for assistance regarding the TL

90108. (*Id.* ¶ 6.) Gardner allegedly falsely told the MPD that even though the TL 90108 was reported as stolen in 2001, Leiske's nephew had located parts to that automobile and Gardner was in the process of lawfully purchasing those parts from the nephew. (*Id.*) Around October 23, 2005, Gardner allegedly mailed law enforcement in Milwaukee a package containing documents showing Gardner purchased the TL 90108 from R.M. in October 2005. (*Id.* ¶ 7.) The government alleges these documents were fraudulent. (*Id.*)

Based on these documents, however, on December 15, 2005, the MPD wrote an official clearance report indicating that the stolen TL 90108 had been recovered and that Gardner was lawfully in possession of the vehicle. (*Id.* ¶ 8.) Around September 11, 2006, Gardner shipped the TL 90108 from Oakland, California to Geneva, Switzerland. (*Id.* ¶ 9.) Between 2007 and 2015, Gardner had the TL 90108 restored in France; however, Gardner replaced the original two-carburetor racing engine bearing number 17317C with a different Talbot Lago three-carburetor engine of that period. (*Id.* ¶ 10.) Gardner allegedly fraudulently caused the replace engine to be stamped "17317C." (*Id.*) In 2015, Gardner caused the TL 90108 to be offered for sale to a potential buyer in Illinois named R.W. (*Id.* ¶ 11.)

The government alleges that Gardner falsely represented to R.W. that Gardner purchased the TL 90108 in October 2005 from R.M., that Gardner was the true owner of the TL 90108, that the TL 90108 was free and clear of all liens, and that TL 90108 was an authentic 1938 Talbot Lago T150-C SS Coupe with Chassis No. 90108 and Engine No. 17317C. (*Id.* ¶ 12.) Gardner also provided R.W. the paperwork he had previously sent to the MPD, as well as the MPD clearance report. (*Id.* ¶ 13.)

Around August 27, 2015, an LLC owned by R.W. agreed to buy the TL 90108 from Gardner for $7.6 million, with $6.8 million to be paid directly to Gardner. (*Id.* ¶ 14.) Gardner

states that questions regarding the 2001 theft were raised again after Gardner's former attorney, Joe Ford, became involved in the matter and pushed R.M. to have the vehicle relisted as stolen, signing a contract with R.M. that the two would wait until its restoration was completed by Gardner and sold to another before they would make an effort to obtain title. (Docket # 27 at 3.)

    2.    *Background Facts Relevant to this Motion*

Gardner asserts that the government's entire case against him is predicated on his alleged theft of the TL 90108 from Lieske's Milwaukee garage around March 4, 2001. (*Id.* at 4.) Two men, Christopher Burke and William Brown, allegedly assisted Gardner with the theft. (*Id.*) Gardner argues that one of the key elements to Burke's story regarding the break-in and theft of the TL 90108 was that Burke had to cut various parts of the disassembled car into pieces to get it out of the garage. (*Id.*)

On December 14, 2017, the government, by Assistant United States Attorney Paul Kanter, and TL 90108 LLC ("the LLC") entered into an agreement regarding storage, preservation, and access to TL 90108. (*Id.* at 6.) Pursuant to the agreement, the parties agreed that TL 90108 would not be "driven, sold, modified, borrowed against or otherwise pledged as collateral, disposed of, in whole or in part, or otherwise impaired or reduced in value or net equity unless the United States Attorney's Office for the Eastern District of Wisconsin agrees in writing to the use, sale, modification, pledge as collateral, reduction in value or equity, or disposition." (*Id.*) The LLC also agreed to maintain the security of TL 90108 in its Massachusetts facility. The agreement also allows the government or law enforcement access to TL 90108 for inspection upon a 7 day advanced written notice to the LLC. (*Id.*) In exchange for access and preservation, the U.S. Attorney's Office agreed that it would not apply for a

search warrant or seizure order with respect to TL 90108 without providing the LLC three business days' notice. (*Id.*) The LLC agreed to not oppose such a government application for search or seizure of the vehicle. (*Id.*) The agreement also provides:

> TL 90108 LLC voluntarily states that the Talbot Lago will continue to be stored at Paul Russel, or with and at the location of a different mutually agreeable bailee, for a period of twelve months from the date this agreement is fully signed or, if criminal charges are brought within that twelve-month period, until those criminal charges are resolved.

(*Id.* at 7.) The grand jury in this matter had been convened and that the government was seeking an indictment of Gardner nearly a year prior to the agreement being in place in January 2017. (*Id.*) The work of the grand jury continued in 2018 and 2019, until the Indictment was filed against Gardner on May 29, 2019. (*Id.*)

On January 11, 2018, the FBI and the government's expert, Richard Adatto, and Dr. Richard Workman's expert, Don McLellan, inspected TL 90108 at Paul Russell's garage. (*Id.*) During that inspection, the FBI took metal shavings from the chassis of TL 90108. (*Id.*) The government used the shavings taken from TL 90108 to compare them metallurgically to shavings taken from a 1938 Talbot Lago Cabriolet. (*Id.*) The government asserts that the results of the test were inconclusive, and the government does not intend to use them at trial. (Docket # 32 at 8 n.4.)

On January 20, 2022, the circuit court in Wisconsin, which is handling a related civil case regarding an ownership dispute over the vehicle (Milwaukee County Case No. 17- CV-867), entered an injunction that prevents the parties from taking actions related to the vehicle and indicates that the vehicle remains in storage at Paul Russell's garage. (Docket # 27 at 7.) Gardner asserts that it is unclear whether the TL 90108 has been modified or changed since the vehicle was subject of the criminal investigation and indictment against Gardner. (*Id.*)

5

Case 2:19-cr-00099-LA-NJ    Filed 03/27/23    Page 5 of 8    Document 40

## ANALYSIS

As an initial matter, Gardner requests an evidentiary hearing to establish whether the government continues to maintain control over the TL 90108. (*Id.* At 8.) It is the government's position that the preservation agreement between the U.S. Attorney's Office and the LLC lasted "for a period of twelve months from the date this agreement is fully signed or, if criminal charges are brought within that twelve-month period, until those criminal charges are resolved." (Docket # 32 at 3.) The government argues that Gardner's case was not charged within twelve months of December 2017 as the grand jury returned the indictment in this case in May 2019; thus, the agreement has lapsed. (*Id.*) Gardner, however, argues that because the case was being pursued by the grand jury throughout 2018 and 2019, even though an indictment was not returned until over a year after the preservation agreement was signed, the grand jury's investigation constitutes "bringing criminal charges" within the twelve-month period following execution of the agreement. (Docket # 27 at 8.) Thus, it is Gardner's position that the agreement did not lapse. (*Id.*)

At bottom, Gardner seeks to inspect or test the vehicle. No evidentiary hearing or construction of the agreement is needed for that. The parties do not dispute the pertinent facts. And importantly, the government does not object to a visual inspection of the vehicle. Thus, to the extent the government still has custody and/or access to the vehicle such that the defense can conduct a visual examination, the government is ordered to coordinate with the defense to allow a visual inspection to take place.

Assuming, however, that the government does not have custody and/or access of the vehicle such that it can provide access for the visual inspection, the government is ordered to coordinate with the third-party holding custody of the vehicle to allow for the defense to

6

conduct a visual inspection. Given the government's previous agreement with the LLC, it is assumed the government can arrange with the LLC for the defense to conduct a visual inspection without further need of a court order specifically ordering the third-party LLC to comply.

Gardner also asserts that he may want to conduct more invasive testing of the vehicle. He represents, however, that he has consulted with experts who have indicated that a visual inspection must occur first in order to determine whether non-invasive testing could accomplish the goal of determining whether the chassis had been cut and welded back together. (Docket # 38 at 9.) Thus, after the defense conducts its visual inspection, to the extent further testing is desired and the government objects to that testing, Gardner may file an additional motion to request a court order for such testing. Any such motion must articulate with specificity what the specific test is that Gardner wishes to conduct, how the test is to be performed, and how the test is material to his defense. I understand both the government and the parties claiming ownership of the vehicle are concerned that invasive testing could damage or diminish the value of the vehicle. (Docket # 32 at 9.) We will not know, however, whether this issue will become ripe until the defense has an opportunity to conduct a visual inspection.

For these reasons, the government is ordered to coordinate with the defense to allow the defense to conduct a visual inspection of the vehicle. To the extent the government does not maintain custody or control of the vehicle, the government is ordered to attempt to coordinate with the third-party maintaining control of the vehicle to permit the defense to conduct a visual inspection.

7

After the visual inspection is complete, to the extent Gardner wishes to conduct additional testing, particularly testing that is invasive and or otherwise objected to by the government, Gardner must file a motion to conduct testing articulating with specificity the nature of the test, how the test is to be performed, and how the test is material to Gardner's defense. The parties are to provide the Court with a written status regarding the visual inspection by **April 30, 2023**.

**IT IS SO ORDERED**.

Dated at Milwaukee, Wisconsin this 27th day of March, 2023.

BY THE COURT

*Nancy Joseph*
_____
NANCY JOSEPH
United States Magistrate Judge