# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
   **Plaintiff,**

 v.               Case No. 19-CR-99

**CHRISTOPHER GARDNER**
   **Defendant.**

## DECISION AND ORDER

The government charged defendant Christopher Gardner with wire fraud and transportation of a stolen vehicle in foreign commerce. The government alleges that in 2001 defendant recruited two men, Christopher Burke and William Brown, to steal a rare car from Roy Lieske's garage in Milwaukee. After Lieske died in 2005, defendant allegedly forged a bill of sale and title transfer documents making it appear he was the true owner and could convey clear title; using those documents, he persuaded police to remove the automobile from a stolen property database, which permitted him to ship the car to Switzerland; and, after restoring the vehicle in France, in 2015 defendant arranged for its sale to an unwitting buyer for more than $7,000,000.

Defendant filed a motion to suppress a photo identification of him made by Brown, arguing that agents used an impermissibly suggestive procedure. The magistrate judge handling pre-trial proceedings denied defendant's request for an evidentiary hearing and recommended the motion be denied. Defendant objects. The district court reviews de novo a magistrate judge's recommendation on a motion to suppress. Fed. R. Crim. P. 59(b). For the reasons that follow, I adopt the recommendation and deny defendant's motion.

## I. IDENTIFICATION STANDARDS

The reliability of evidence, including witness identifications, is ordinarily for the jury to evaluate. See Manson v. Brathwaite, 432 U.S. 98, 116 (1977). In some instances, however, evidence is so extremely unfair that its admission offends due process. See United States v. Sanders, 708 F.3d 976, 983 (7th Cir. 2013). "Unduly suggestive identification procedures represent one example of those fundamentally unfair situations. A procedure becomes so flawed as to implicate due process when it creates a 'very substantial likelihood of irreparable misidentification.'" Id. (quoting Neil v. Biggers, 409 U.S. 188, 198 (1972)). In such cases, the identification must be suppressed. Id.

To determine whether such a violation has occurred, the court conducts a two-step analysis. Id. First, the defendant must establish that the identification procedure used by law enforcement was both suggestive and unnecessary. Id. at 983-84. If this is established, the court then decides, based on the totality of the circumstances, whether the identification was sufficiently reliable to outweigh the effect of the tainted procedure. Id. at 984.

The first prong focuses on police conduct—its suggestiveness and necessity in the specific situation at hand. Id. The most widely criticized pretrial identification practice is the "show-up," where police show only one suspect to the witness, either through a photograph or in person. See United States v. Newman, 144 F.3d 531, 535 (7th Cir. 1998); United States v. Funches, 84 F.3d 249, 254 (7th Cir. 1996). Show-ups are inherently suggestive, Sanders, 708 F.3d at 984, but the admission of evidence of a show-up does not, without more, violate due process, United States v. Hawkins, 499 F.3d 703, 707 (7th Cir. 2007). "To determine whether, under the circumstances, the suggestive identification was unnecessarily so, [the court] must determine whether there was a good reason for the failure to resort to a less suggestive

2

alternative." Id. For instance, a show-up may be appropriate where the police apprehend a person immediately after the crime and in close proximity to the scene, where the identifying witness may not survive until a line-up can be arranged, or where the suspect may quickly alter his appearance. Funches, 84 F.3d at 254.

The second prong focuses on the identifying witness and his knowledge of the suspect absent the suggestive procedure. Sanders, 708 F.3d at 984. Here, the court considers: (1) the opportunity of the witness to observe the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness at the time of the identification;[1] and (5) the length of time between the crime and the identification. Lee v. Foster, 750 F.3d 687, 692 (7th Cir. 2014) (citing Biggers, 409 U.S. at 199-200).

## II. FACTS AND BACKGROUND

### A. The Identification

I draw the operative facts regarding the identification from defendant's motion and supporting attachments. (R. 28 at 2-3; R. 28-1.) On March 19, 2019, the government interviewed Brown from the U.S. Attorney's Office in New York. Brown indicated that in early 2001 Burke asked him to help steal a rare old car located in Milwaukee. Burke explained that he did work for a guy who lived in Geneva, Switzerland, but who is a U.S. citizen. Burke stated that the "Swiss guy" would pay them to steal the then-disassembled car, which they would load into Burke's truck and transport back to Florida, where Brown and Burke lived. Brown could

---

[1] Researchers have questioned the value of this factor, noting that the confidence-accuracy relationship for eyewitness identification is weak. However, the Supreme Court has not removed it from the Biggers framework. See Phillips v. Allen, 668 F.3d 912, 916-17 (7th Cir. 2012).

3

not remember the "Swiss guy's" name. Burke further explained that the Swiss guy had someone case the place and make an offer to buy the car, but the owner refused; the Swiss guy also made an attempt to buy the car himself but was turned down again. The Swiss guy drew a map of the garage and identified where the car parts were located. Burke told Brown the Swiss guy would pay Brown $5000 cash for his assistance. Brown agreed to help Burke steal the car. (R. 28-1 at 2.)

Brown drove Burke's truck from Florida to Chicago, where he met Burke and the Swiss guy at an airport. (R. 28-1 at 2.) Brown described the Swiss guy as a male, about 5'9" to 5'10" tall with a medium build, grayish hair and balding. The Swiss guy was about 30 years older than Brown and did not have a foreign accent. They all had dinner together at a restaurant near Navy Pier in Chicago, then stayed at a hotel in Chicago or Milwaukee that night. The following night, they stole the car. Burke drove his box truck, with Brown as a passenger, to Lieske's garage in Milwaukee. Burke parked the truck about a block away, and Brown waited in the truck while Burke broke into the garage. After gaining entry, Burke returned to the truck and escorted Brown to the garage. (R. 28-1 at 3.) The two men entered and moved the car parts to the overhead garage door; Burke then backed the truck up to the door, and they loaded the parts into the truck and drove back to Chicago, where they met the Swiss guy. (R. 28-1 at 4.) Burke paid Brown $5000 cash in an envelope; Brown also received a $2000 check from the Swiss guy. (R. 28-1 at 4-5.) Brown and the Swiss guy flew on the same flight from Chicago to Fort Lauderdale, Florida, making small talk in the airport and on the plane. Brown stated that he never saw the car or the Swiss guy after this event. (R. 28-1 at 5.)

On March 26, 2019, the government interviewed Brown again, this time at the U.S. Attorney's Office in Milwaukee. Prior to the interview, an agent drove Brown to Lieske's garage,

4

and Brown recognized it as the building he and Burke entered to steal the car in 2001. Brown also pointed out where Burke parked the truck and further discussed the layout of the garage. (R. 28-1 at 6.)

Brown stated that he did not see the Swiss guy near Lieske's garage on the night of the theft but thought Burke may have said the Swiss guy was going to Leiske's house to act as a lookout. The agent also presented Brown with two photos. Brown identified the first as Burke and the second (which depicted defendant) as the Swiss guy. Brown commented that the photo of the Swiss guy was kind of blurry, and he looked older in the photo than Brown remembered. (R. 28-1 at 7.) The agent also showed Brown photos of the stolen car parts, which Brown recognized. (R. 28-1 at 8.) The agent attached to his report the photos of Burke and defendant shown to Brown. (R. 28-1 at 12-13.)

**B.     Proceedings Before Magistrate Judge**

    **1.     Arguments of the Parties**

In the original motion, defendant argued that the show-up identification of the "Swiss guy" by showing Brown a single photograph was unduly and unnecessarily suggestive. There was no need, he asserted, to show Brown a single photo, particularly since Brown never referred to defendant by name during the first interview. (R. 28 at 5.) Defendant further argued that the identification was not reliable, stressing Brown's statement that the photo was blurry and depicted a man who appeared to be older than the Swiss guy. This, defendant claimed, suggested Brown was uncertain and influenced by the manner in which the identification took place. (R. 28 at 5.) Defendant asked for an evidentiary hearing to establish that the show-up identification by Brown should be suppressed. (R. 28 at 3.)

The government responded that the court should deny defendant's request for an evidentiary hearing, as he had not conferred with the government, as required by Local Rule 12, nor had he identified any disputed material facts. The government further argued the court should deny the motion on the merits because the identification procedure was not unduly suggestive and, even if it was, the identification was nevertheless reliable. (R. 31 at 1-2.)

On the first prong of the due process analysis, the government indicated that the FBI agent used a single photo because the only photo of defendant in the agent's possession at the time was a full-length photo, which included defendant's body. The agent could not, the government asserted, have effectively used that photo in an array because it would have appeared much different from the other photos, which are typically "mug-shot" style photos depicting only the person's face and head. Additionally, the background of defendant's photo included columns, which would have appeared different as well. The government further explained that, because it was a full-length photo, the agent had to zoom in on defendant's face, resulting in the blurriness Brown noted. In order to make defendant's photo look like others, the agent would have been required to zoom in even more, making it even blurrier. The government concluded that including such a photo in an array with other, non-pixelated photos, would have made defendant's picture stand out from the others. (R. 31 at 4.) The government attached to the response an affidavit from the agent explaining the reasons for the identification procedure (R. 31-1) and a copy of the full-length photo (R. 31-2).

On the second prong, the government argued the identification was reliable despite any flaws in the procedure. (R. 31 at 4-5.) Considering the relevant factors, the government argued that Brown displayed sufficient certainty in making the identification, with the blurriness he noted being the product of the agent's attempts to zoom in on the photo; that Brown had

6

ample opportunity to view defendant at the time of the crime, meeting with him at the airport and having dinner with him the first night, then flying back to Florida with him after the theft; and that Brown previously provided an accurate description of the Swiss guy. (R. 31 at 6-8.) The government conceded that 18 years separated the crime and the identification but argued that any concerns about the passage of time were diminished by the strength of the other factors. (R. 31 at 8 n.4.)

In reply, defendant argued that certain facts were in dispute, including the date of the photo used by the agent and how it was obtained; alternative photos available to law enforcement at the time of the show-up; and the necessity or exigent circumstances that required the agent to use the show-up procedure. (R. 39 at 6-7.) He further argued that the government failed to establish any urgency in using the show-up procedure, any basis for the court to conclude the agent had only one photo available, or any explanation as to why the agent used a photo not from the time-frame of the theft. (R. 39 at 8-9.) He noted that when INTERPOL issued a "red notice" at the FBI's request in September 2019 it included three of defendant's passport/driver's license photographs, illustrating that the government did have access to photos that could have been used in an array. (R. 39 at 9; R. 39-3.) As to the reliability of the identification, defendant stressed the length time between the crime and the identification (more than 18 years), Brown's equivocation identifying the Swiss guy, and the FBI's use of a more recent photo of him (rather than one from the operative time-frame). (R. 39 at 10-11.) Defendant further stated that he did not move to Switzerland until 2002 and thus was not a "Swiss guy" at the time of the theft. (R. 39 at 10-11.)

**2.    Recommendation**

The magistrate judge denied defendant's request for an evidentiary hearing, noting that

all of the factual disputes he identified went to the first step of the analysis. Because the motion failed at the second step, a hearing was unnecessary. (R. 41 at 5.)

At the first step, the magistrate judge found the government's rationale for using the show-up procedure inadequate. Assuming the government had other photos, as defendant claimed, it was unclear why the FBI would not have used one of those photos to create an array. The magistrate judge concluded that the government failed to show any urgency or other extraordinary circumstances compelling the use of a show-up procedure. (R. 41 at 7.)

However, the magistrate judge concluded that the identification was nonetheless reliable. (R. 41 at 7-8.) She stressed that Brown spent a significant amount of time with the Swiss guy, giving him ample opportunity to view the man; that Brown provided a detailed and accurate description of the Swiss guy prior to viewing the photograph; and that Brown's statement that the man in the photo looked older than he remembered comported with the fact that the photo was taken after the theft. (R. 41 at 8.) The magistrate judge further noted that defendant could challenge Brown's identification at trial. (R. 41 at 8-9.) Finally, the magistrate judge deferred to me any ruling on Brown's ability to identify defendant in court during a trial. (R. 41 at 9.)

### III. DISCUSSION

In his objections, defendant asks the court not to adopt the recommendation and instead grant an evidentiary hearing to determine whether the identification was reliable. (R. 44 at 1.) He contends that none of the extraordinary circumstances identified by the Seventh Circuit exist here and agrees with the magistrate judge's finding at step one of the analysis. (R. 44 at 2-3.) However, he disagrees with the finding of reliability and requests the court hold a hearing to determine facts in dispute as they relate to this prong of the analysis. (R. 44 at 3.) He faults

8

the magistrate judge for not addressing his point that he did not live in Switzerland at the time of the alleged theft, which he contends is a huge red flag as it relates to the reliability of the identification and evidence of possible taint of Brown's testimony. (R. 44 at 3-4.) He also stresses Brown's statements that the photo was blurry and the man appeared older than he remembered. He further notes that this is not a case in which the witness identified the suspect by name and was then shown a picture to confirm that he was, in fact, the person involved. Here, Brown referred to the person only as the "Swiss guy." (R. 44 at 4.) Finally, defendant argues an evidentiary hearing is necessary to determine how confident Brown was in the identification and to what extent the show-up procedure influenced his identification. (R. 44 at 5.)

The Supreme Court has held that the Due Process Clause does not require a pre-trial evidentiary hearing whenever a defendant alleges an improper identification, Watkins v. Sowders, 449 U.S. 341, 349 (1981), and the magistrate judge did not err in denying a hearing in this case. "A defendant bears the burden of showing the need for an evidentiary hearing on a motion to suppress. A hearing is required only when a substantial claim is presented and there are disputed issues of material fact that will affect the outcome of the motion." United States v. Jones, 56 F.4th 455, 476-77 (7th Cir. 2022) (internal quote marks omitted); see also United States v. Curlin, 638 F.3d 562, 564 (7th Cir. 2011) ("The defendant bears the burden of both identifying a definite disputed factual issue, and demonstrating its materiality."); United States v. Rodriguez, 69 F.3d 136, 141 (7th Cir. 1995) (noting that the defendant has the burden of establishing the necessity of a hearing, that this burden is met only upon the presentation of definite, specific, detailed and non-conjectural facts, and that the defendant's submission must demonstrate that there is a disputed material issue of fact). Defendant's original motion

9

identified no specific factual disputes, and the matters raised in reply related solely to the first step of the analysis.[2] Only now does defendant allege factual disputes related to the second step.

While the district court conducts a de novo review on timely objection, "courts have consistently held that de novo review does not mean that a party is entitled to submit new evidence and arguments not presented to the magistrate judge." United States v. De La Vega, No. 18-CR-40, 2018 U.S. Dist. LEXIS 224647, at *2 (E.D. Wis. Dec. 3, 2018). "Permitting a party a do-over when things do not go as hoped negates the efficiencies gained from referring matters to a magistrate judge for a recommendation." Id. at *4.

In any event, the undisputed facts of record are sufficient to resolve the motion. Brown had ample opportunity to observe the Swiss guy around the time of the theft: he met the man at the airport, had dinner with him in Chicago, and, after committing the theft, met him again at the airport, received payment, and then flew with him on the same flight back to Florida. Accordingly, Brown "was not a casual or passing observer, as is so often the case with eyewitness identification." Manson, 432 U.S. at 115; see also Lee, 750 F.3d at 692 (finding

---

[2]As the government notes, arguments raised for the first time in reply are waived. (R. 50 at 3 n.1.) However, the magistrate judge did not rely on this rule to deny a hearing, instead finding that none of the factual issues raised in the reply impacted her conclusion on reliability. The government has separately objected to the magistrate judge's step one finding, specifically, her assumption that the government had other photos available. The government notes that the INTERPOL red notice containing the other photos issued several months after the identification occurred, and the record contains no evidence that these photos were in the government's possession at the time of the identification. (R. 45 at 2-3; R. 52 at 1.) The government contends that the agent's explanation for his use of the full-body photo remains un-controverted. (R. 45 at 3.) In response, defendant contends that this underscores the need for a hearing, arguing that the timing of the red notice does not mean those photos were inaccessible at the time of the show-up. (R. 49 at 1-2.) Like the magistrate judge, I find the second step of the analysis dispositive; accordingly, I need not resolve the government's objection to the step one finding.

10

identification reliable where the witness drove the suspect around after a shooting and had a brief discussion with him in the car).

Brown provided a reasonably detailed description of the "Swiss guy" prior to viewing the photograph, describing him as a white male, 5'9" to 5'10", medium build, grayish hair, and balding. While Brown indicated that the man in the photo looked older than the person Brown remembered, I agree with the magistrate judge that this makes sense given the use of a photo taken after the theft. Brown also stated the photo was kind of blurry, but the government has explained why that was so, an explanation defendant has not disputed.

Defendant contends that these statements evince uncertainty, but as the Seventh Circuit has noted, under some circumstances a more tentative or equivocal identification may give the court greater confidence that the identification is the product of true recollection rather than the product of suggestion. Hawkins, 499 F.3d at 710-11. In those circumstances, "the equivocal nature of the identification affects the weight the jury might give to the earlier identification, not the reliability of the identification itself." Id. at 711; see also United States v. Moore, 936 F.2d 1508, 1520-21 (7th Cir. 1991) (holding that the tentative nature of an identification affects the weight of the evidence, not its relevance or potential prejudice). Defendant also asks for a hearing to explore how confident Brown was and the extent to which the show-up procedure influenced his identification, but this is too conjectural to require a hearing. See United States v. Varela, 976 F. Supp. 1144, 1147 (N.D. Ill. 1997) ("Defendants have not presented any 'definite, specific, detailed, and nonconjectural facts;' Defendants merely argue that an evidentiary hearing is required so that they can have an opportunity to cross-examine identification witnesses to determine what transpired during the out-of-court, photographic identifications."), aff'd sub nom. United States v. Torres, 191 F.3d 799 (7th Cir. 1999).

This leaves the passage of time between the theft and the identification. "[B]ut any concern over that length of time is diminished by the strength of the other factors—particularly [Brown's] familiarity with [the Swiss guy] and his specific description of him." United States v. Recendiz, 557 F.3d 511, 526 (7th Cir. 2009).

Defendant indicates that he became a resident of Switzerland in 2002, which should raise a red flag regarding his identification as the "Swiss guy" involved in this 2001 theft. (R. 39-4; R. 44 at 3; R. 53 at 2.) The government counters with evidence that defendant held himself out as the CEO of a Swiss company from 1976 to 2011. (R. 50 at 6 n.5; R. 50-3.) Any discrepancy as to precisely when defendant lived in Switzerland does not materially impact the reliability of Brown's identification. As in Manson v. Brathwaite,

> Surely, we cannot say that under all the circumstances of this case there is a very substantial likelihood of irreparable misidentification. Short of that point, such evidence is for the jury to weigh. We are content to rely upon the good sense and judgment of American juries, for evidence with some element of untrustworthiness is customary grist for the jury mill. Juries are not so susceptible that they cannot measure intelligently the weight of identification testimony that has some questionable feature.

432 U.S. at 116.

In his reply in support of the objections, defendant makes a number of additional arguments in support of a hearing, but contentions raised for the first time in a reply brief are waived. E.g., United States v. Waldrip, 859 F.3d 446, 450 n.2 (7th Cir. 2017). Moreover, the arguments are conjectural. See United States v. Dortch, 342 F. Supp. 3d 810, 814 (N.D. Ill. 2018) ("Conjecture, however, does not warrant an evidentiary hearing; the defendant must present definite, specific, detailed, and nonconjectural facts that justify relief.") (internal quote marks omitted).

For instance, defendant believes that the FBI used suggestive tactics in "an effort to

improperly influence Brown's identification in order to ensure he that identified Gardner as the 'Swiss guy.'" (R. 53 at 2.) However, other than the agent's use of the show-up procedure, which is undisputed, defendant provides no factual basis for that belief. Defendant further indicates that he "disagrees with the factual assertions made by the government regarding Burke's [sic] opportunity to observe the individual he repeatedly and unequivocally deemed the 'Swiss guy.'" (R. 52 at 2.) As indicated above, I have taken the operative facts from defendant's original motion and supporting attachments. Defendant does not specify the facts with which he disagrees, nor does he proffer any facts contradicting Brown's account. See Dortch, 342 F. Supp. 3d at 814 ("Generally, to establish the existence of a material fact dispute, a defendant seeking to suppress evidence must proffer testimony, whether his own or from other witnesses, or other evidence that contradicts the government's account.").

Later in the reply, defendant contends that other factual issues are in dispute related to the procedures the FBI used, e.g., why did the agent not conduct a formal photo array, why did the agent not use other available photos of him taken closer in time to the theft, how exactly did Brown describe the physical appearance of the Swiss guy, why did Brown call him the Swiss guy, and why did Brown believe the man to be from Switzerland. (R. 53 at 2-3.) To the extent these disputes relate to step one of the analysis, they are not material to resolution of the motion. The reports presented with the motion include Brown's description of the Swiss guy and explain why Brown thought the man was from Switzerland (Burke said so). Defendant fails to explain why a hearing is needed to further explore these issues.

Finally, defendant contends in reply that there is nuance in some of the reliability factors that requires an evidentiary hearing, including the extent to which Brown saw the Swiss guy, how sure he was or the way he equivocated when looking at the photograph, the extent to

13

which Brown was influenced by the unduly suggestive procedure, and the actual description that was provided by Brown, which was quite vague and could cover many individuals. (R. 53 at 3-4.) Defendant identifies no material factual disputes regarding Brown's interactions with the Swiss guy; he does not explain why a hearing is necessary to explore Brown's reaction to the photo; he does not specify any facts he seeks to elicit regarding the extent to which Brown was influenced by the show-up; and the record already contains Brown's description of the Swiss guy, which defendant does not contradict. See Dortch, 342 F. Supp. 3d at 814 (denying hearing where the defendants "offered nothing but conjecture that an examination of the victims [about the circumstances of their encounter with the criminals] might reveal information that suggests that their identifications were unreliable"); Varela, 976 F. Supp. at 1147 (denying evidentiary hearing so the defendants could cross-examine the identification witnesses regarding "what transpired during the out-of-court, photographic identifications"); see also Torres, 191 F.3d at 812 (affirming denial of a hearing where "the differences between the defendants' motions and the government's responses rest solely on the characterization of the facts and the conclusions drawn from them"). Defendant will be free to explore these issues at trial. See Varela, 976 F. Supp. at 1147-48 (stressing that the defendants could cross-examine the witnesses and argue accuracy to the jury at trial).

\* \* \*

Defendant also seeks suppression of any in-court identification of him by Brown. The admissibility of in-court identifications is governed by the same legal standard as the admissibility of out-of-court identifications. Varela, 976 F. Supp. at 1151 (citing United States v. Rutledge, 40 F.3d 879, 889 (7th Cir. 1994), rev'd on other grounds, 515 U.S. 1157 (1995)). The central question is whether the out-of-court identification procedure was so impermissibly

suggestive as to give rise to a very substantial likelihood of irreparable misidentification. Id. For the reasons set forth above, in this case it was not. See Rutledge, 40 F.3d at 889 (finding in-court identification following previous out-of-court identification by single photograph reliable, despite significant lapse of time, where the witness spent 30 minutes with the defendant in a well-lit room, was attentive to detail, and gave a detailed description).

## IV. CONCLUSION

**THEREFORE, IT IS ORDERED** that the magistrate judge's recommendation (R. 41) is adopted, and defendant's motion to suppress (R. 28) is denied.

Dated at Milwaukee, Wisconsin, this 22nd day of May, 2023.

/s/ Lynn Adelman
LYNN ADELMAN
District Judge